In the Matter of the Application of FRANCIS T. McENENY, Appellant, Respondent, for an Order of Mandamus against JOSEPH V. McKEE, as President of the Board of Aldermen of the City of New York, Respondent, Appellant.

First Department, July 1, 1932.

*Louis P. Brown*, for the petitioner.

*Henry J. Shields* of counsel [*William E. C. Mayer* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the defendant.

MERRELL, J.  The petitioner was an employee of the president of the board of aldermen of the city of New York, holding the position of chief examiner in the president's office.  He was honorably discharged from the military service of the United States on October 8, 1919, having served as army field clerk.  He was removed from his office on or about May 19, 1931, by the president of the board of aldermen.  The petitioner bases his application for a peremptory mandamus order upon the ground that he was removed from his position without having charges preferred against him or having been given a hearing upon notice.  It was the claim of the petitioner that section 22 of the Civil Service Law (as amd. by Laws of

1924, chap. 612), providing how a veteran may be removed from a position in the employment of a State and the several cities, counties and towns thereof, protects him from summary removal by the president, and that his removal was illegal and void.

The answer of the defendant, the president of the board of aldermen of the city of New York, alleges that the board of aldermen of said city is a legally constituted legislative body of the city, and that he is a legislative officer of the city, and that the employees in his office, including the petitioner, are legislative employees, and, as such, are subject to appointment and removal from their positions in the office of the president of the board of aldermen without reference to the general laws of the State in regard to veteran soldiers, and that section 22 of the Civil Service Law does not apply. It is alleged in the answer of the respondent that the position of chief examiner in his office is a confidential one requiring the performance of duties of a confidential nature in obtaining special information for the president through personal inspections and investigations and the obtaining of data as to all matters appearing on the calendars of the board of aldermen and of the municipal assembly of the city, and of the other boards and bodies connected with the city government of which the president, by virtue of his office, is a member, to wit, the board of estimate and apportionment and the committee of the whole of such board, the board of commissioners of the sinking fund, and the armory board; that such inspections and investigations included matters pertaining to ordinances and local laws on the calendars of the board of aldermen and of the municipal assembly, and that the duties of said examiner included obtaining data concerning proposed school sites of the board of education, street opening proceedings, changes in the city map, the acquisition of parks, playgrounds and school sites; and that such chief examiner is required to make confidential reports to the president of the board of aldermen in order to assist said president in reaching a decision and conclusion as to how he shall vote on matters pending before the board of aldermen and other bodies of which the president is a member. The answer of the defendant alleges that the petitioner is a legislative employee of the city and is classified in the exempt class, and that his appointment or removal from the position of chief examiner during all the times mentioned in the petition has been exempt from any restrictions or limitations imposed by law or otherwise in respect to the power of the president forthwith to remove the petitioner from said position. The answer further alleges that the petitioner was duly removed from his said position of chief examiner in the office of the president of the board of aldermen of the city of New York.

The answer further alleges that in January, 1932, the attention of the defendant was called to the report of a special assistant corporation counsel of the city of New York to the corporation counsel of the said city, whereby it appeared that the petitioner, acting in concert with others, had substantial and apparently profitable transactions in connection with school sites and adjacent property, as to which said school sites it was his duty to make personal inspections and investigations and render confidential reports thereon, and that said petitioner had acted in respect thereto to the disadvantage of the city of New York and of the board of education of said city; and that said assistant corporation counsel had reported concerning a certain proceeding pending before the board of estimate and apportionment of the city of New York, known generally as the Force Tube Avenue Widening Proceeding, in which proceeding it appeared that the petitioner, for his own profit and advantage, had violated his duties as chief examiner in the office of the president by keeping the president in the dark and in ignorance of his personal financial interest in real property affected by said Force Tube Avenue Widening Proceeding, thereby permitting the respondent, in ignorance of said interest of the petitioner, to vote upon a proposal, the adoption of which would favorably affect the interests of said petitioner. A copy of the report of the special assistant corporation counsel is annexed to and made a part of the answer of the defendant.

We are of the opinion that under the provisions of the Greater New York Charter, the president of the board of aldermen is a legislative officer, and the board of aldermen of the city a legislative body. By section 17 of the Greater New York Charter (as amd. by Laws of 1905, chap. 629) it is provided that the legislative power of the city shall be vested in one house to be known and styled as " the board of aldermen of the City of New York." By section 18 (as amd. by Laws of 1923, chap. 667) the charter provides that the board of aldermen shall consist of members elected, one from each aldermanic district of the city, and that the president of the board of aldermen shall be chosen on a general ticket by the qualified voters of the city at the same time and for the same term for which the mayor of the city is elected; that he shall be known as the president of the board of aldermen. A borough president is an elective officer and a member of the board of aldermen, the local legislative body of the city. (*Needleman* v. *Voorhis,* 254 N. Y. 339, 340.) Section 226 of the Greater New York Charter (as amd. by Laws of 1917, chap. 258) provides that the mayor, comptroller, president of the board of aldermen and the presidents of the boroughs of Manhattan, Brooklyn, The Bronx, Queens and Richmond shall

constitute the board of estimate and apportionment. Under the provisions of section 242 of the charter (as amd. by Laws of 1905, chap. 629), such board is invested with " the exclusive power in behalf of the city to grant to persons or corporations franchises or rights or make contracts providing for or involving the occupation or use of any of the streets    *    *    *    within or belonging to the city, whether on, under or over the surface thereof, for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat or power    *    *    *." In the exercise of its franchise-granting power the board of estimate and apportionment and the members thereof act in a legislative capacity. (*Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377, 389.) In voting upon the grant of a franchise as a member of the board of estimate and apportionment, the president of the board of aldermen acts as a legislative officer. Section 10 of the City Home Rule Law (Laws of 1924, chap. 363, as amd. by Laws of 1928, chap. 671) provides that the local legislative body of the city " shall be the board of aldermen    *    *    *    and, if there be a board of estimate and apportionment, shall include such board of estimate and apportionment as a separate branch thereof. If a city officer be entitled to vote in both branches of the local legislative body, he shall be entitled to vote on the adoption of a local law only in the board of estimate and apportionment. If a local legislative body of a city consists of more than one branch, the local legislative body shall be known as the ' municipal assembly ' of such city." Such local legislative body has the power to vote on the adoption of local laws relating to the property, affairs or government of the city and is an important legislative branch of the city in which the defendant, respondent, as president of the board of aldermen, sits and votes as a member of the board of estimate and apportionment. A further provision of the Home Rule Law clearly constitutes the president of the board of aldermen a legislative officer. By section 9 of the Civil Service Law (as amd. by Laws of 1927, chap. 440) it is provided that " The civil service of the State and of each of its civil divisions and cities shall be divided into the unclassified service and the classified service. The unclassified service shall comprise *all elective officers*,    *    *    *    *all legislative officers and employees*    *    *    *. The classified service shall comprise all positions not included in the unclassified service." (Italics are the writer's.) Section 13 of the Civil Service Law (as amd. by Laws of 1927, chap. 440) creates an exempt class in the classified service, in which class the municipal civil service commission has placed the chief examiner in the president's office.

According to the allegations of the petition, the petitioner, on or about January 1, 1922, was first appointed to the position of private secretary to the president of the board of aldermen of the city by the president of the board then in office, and that on or about January 1, 1923, the petitioner was promoted from that office to the position of chief examiner in the office of the president of the board of aldermen of the city of New York, and that he has continued and remained as such chief examiner until his removal by the present president of the board of aldermen.

We have no doubt that the statutes hereinbefore referred to creating the office of president of the board of aldermen and defining his duties and powers constitute him a legislative officer and his position, as president, a legislative office. The employees of his office are legislative employees in the unclassified service, under the provisions of section 9 of the Civil Service Law, above quoted.

The petitioner herein went to argument upon his petition and the answer of the president. All statements contained in either the opposing affidavits or the answer of the defendant must be assumed to be true. (*People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390, 398.) In that case the Court of Appeals wrote as follows: "When a relator in a mandamus proceeding goes to argument upon his petition and the opposing affidavits of the defendant and demands that a peremptory writ issue, as was the course pursued in this case, the proceeding is in the nature of a demurrer to the facts set up by the defendant, and the right to the writ must be determined upon the assumption that the averments in the defendant's affidavits are true." In order to entitle the petitioner to mandamus he must show a clear legal right thereto. (*People ex rel. Corrigan* v. *Mayor, etc.*, 149 N. Y. 215, 223; *Matter of Haebler* v. *N. Y. Produce Exchange*, Id. 414, 418; *Matter of County of Ulster* v. *State Dept. of Pub. Works*, 211 App. Div. 629, 633; *Matter of Spanhake* v. *Teachers' Retirement Board*, 224 id. 75, 79; affd., 249 N. Y. 605.) We must, therefore, assume the truth of all the allegations contained in the answer of the defendant. These allegations, in brief, are that the petitioner's duties pertain to inspections and investigations of matters with reference to ordinances and local laws on the calendars of the board of aldermen and of the municipal assembly, and confidential reports to the respondent as president of the board of aldermen, " in order to assist the respondent in reaching a decision and conclusion as to how to vote on matters pending before the Board of Aldermen and before also the Board of Estimate * * *." Not only this, but the defendant has also alleged, as he had a right to do, that the petitioner was guilty of misconduct and deceit necessitating his summary

removal from the position of chief examiner. We have no doubt that the petitioner was himself a legislative employee in the office of the president of the board of aldermen of the city of New York, a legislative officer, and that the petitioner is removable from his office summarily at the will of such legislative officer. (*Matter of Shaughnessy* v. *Fornes*, 172 N. Y. 323, 326.) His duties as chief examiner in the office of the president of the board of aldermen, as well as the manner of his appointment, make the petitioner a legislative employee. The Court of Appeals in *Matter of Shaughnessy* v. *Fornes* (*supra*, at p. 326) stated: " The board of aldermen is a legislative body. It has the power to elect its own officers and attendants, and neither the statute giving preference to veteran soldiers nor section fifteen hundred and forty-three of the charter has any application to such a position. These statutes were obviously intended to govern appointments in the various departments of the civil service of the city. They have no application to elective officers or appointees. No one yet has asserted that the general laws in regard to veteran soldiers, or the statute which regulates appointments in the civil service, have any application to legislative bodies. The Senate and Assembly of this State still have the power to elect their own officers and attendants, untrammeled by any of the restrictions contained in the Civil Service Law, or any other statute in regard to appointments. The same principle is applicable to the board of aldermen of the city of New York." We are of the opinion that the provisions of section 22 of the Civil Service Law with relation to veterans may not avail the petitioner to retain his office. We are, furthermore, of the opinion that the petitioner's relations with the president of the board of aldermen were confidential, involving considerations of trust and secrecy. He is shown to have deceived his superior, and for such action was removed from his position. We do not think he has shown any clear legal right to any mandamus order, and we believe the court below, in granting an alternative mandamus order, clearly erred. In order to be entitled to either a peremptory or alternative mandamus order, it was incumbent upon the petitioner to show a clear legal right thereto. This the petitioner failed to show. (*Matter of Spanhake* v. *Teachers' Retirement Board*, 224 App. Div. 75; affd., without opinion, 249 N. Y. 605.) In the case last cited this court (at p. 79) said: " In our opinion, the petitioner has not shown a clear, legal right to either a peremptory or an alternative mandamus order. Mandamus can only be granted in cases where there is a clear, legal right thereto. (*People ex rel. McMackin* v. *Board of Police*, 107 N. Y. 235; *People ex rel. Dady*

v. *Coler*, 171 id. 373; *Matter of Whitman*, 225 id. 1; *Matter of Eiss* v. *Summers*, 205 App. Div. 691.) "

The order appealed from should be reversed, with ten dollars costs and disbursements to the defendant, and petitioner's motion in all respects denied, with costs.

FINCH, P. J., McAVOY, MARTIN and TOWNLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and petitioner's motion in all respects denied, with costs.