956

(December 1, 1972)

In the Matter of ADOLPH ROHER et al., Appellants-Respondents, v. DAVID N. DINKINS et al., Constituting the Board of Elections of the City of New York, et al., Respondents-Appellants. ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Intervenor-Respondent-Appellant.— Judgment, Supreme Court, New York

County, entered October 20, 1972, modified, on the law, to the extent of (a) declaring that section 2590-c (subd. 6, par. [34], cl. b) of the Education Law is unconstitutional only insofar as it purports to permit vacancies to be filled for the entire unexpired term of a previously elected community board member, and (b) vacating that portion thereof which declares that the offices presently held by the individual respondents shall be vacant as of January 1, 1973. Except as so modified, the judgment is affirmed, without costs and without disbursements. Although we agree with Special Term that the provisions of sections 3 and 4 of article XIII of the Constitution are applicable to elected community board members, only so much of section 2590-c (subd. 6, par. [34], cl. b) of the Education Law as violates the Constitution should have been invalidated. As hereby modified, the aforesaid subdivision will allow vacancies to be filled for the permissible period. Since the appointments of the individual respondents (as distinguished from the term of such appointments) have not been invalidated, they may continue to discharge their duties until their successors shall have been chosen and qualified. As of January 1, 1973, the offices held by such respondents shall only be deemed vacant for the purpose of choosing their successors. (Public Officers Law, § 5.) We find nothing in article XIII of the Constitution which precludes its application to school board elections. We are cognizant of the fact that some school elections are held in May for terms commencing the following July, while others are held in November for terms commencing in January (see, e.g., Education Law, §§ 2002, 2502, 2553, 2590-c, 2602); and that prescribed school election procedures are often elaborate and sometimes conducted by different entities than those which conduct general elections (see, e.g., Education Law, § 2602 et seq.; § 2590-c). Nevertheless, this is no justification for disregarding the salutary purpose underlying the constitutional provisions. Simply stated, they limit to as short a term as possible the tenure of an appointee to a vacancy in elective office. (*People ex rel. Weller* v. *Townsend,* 102 N. Y. 430; *Matter of Schwab* v. *Boyle,* 174 App. Div. 442, affd. 219 N. Y. 561.) Unlike the situation elsewhere in the State, the New York City Community School District System (Education Law, art. 52-A) does not provide for annual elections or for staggered terms. Community boards in New York City are elected for concurrent two-year terms (Education Law, § 2590-c, subd. 1), except for the first such election which was for a three-year concurrent term (§ 2590-b, subd. 2, par. [d]). Accordingly, no provision comparable to that contained in legislation establishing other school systems could be made for filling vacancies at an annual school board election. (Compare, for example, Education Law, § 1607, subd. 2; § 1709, subd. 17; § 2502, subd. 6; § 2502, subd. 9, par. n; § 2553, subd. 11, par. [n].) Such legislative failure, however, cannot curtail the right of the qualified voters to select their own officers at the earliest possible opportunity. (*People ex rel. Weller* v. *Townsend, supra;* `Matter of Schwab* v. *Boyle, supra.*) In reaching our determination, we have taken note of the current conflicts involving the New York City public school system and of the fact that the life of the unpaid, volunteer board members is not always a happy one these days. Under such circumstances, in addition to other causes such as death or relocation, vacancies resulting from resignations should not be an unexpected consequence. Indeed, although we are here concerned with five vacancies on one community board, we have been advised on this appeal that at least 70 vacancies have occurred since July, 1970, on the city's 31 boards. In view of the involved and detailed registration and election procedures contained in the city's so-called Decentralization Law (see Education Law, § 2590-c), which differ materially from those which ordinarily govern general elections, we find considerable merit in respond-

ents' arguments that a simultaneously-held November general and school board election could prove chaotic and that periodically held special school board elections would be unduly burdensome. Accordingly, we believe that our decision is pragmatic as well as legally sound, and we leave the matter of appropriate further relief to initiation by the Legislature or by the Governor. Concur — Stevens, P. J., Murphy, McNally, Steuer and Tilzer, JJ. [71 Misc 2d 739.]